Case number 22-5150, et al. Maria Esparraguera, appellant, versus Department of the Army, et al. Mr. Walker for the appellant, Mr. Hinshelwood for the appellees. Mr. Walker, good morning. Thank you, good morning. May it please the court. Lucas Walker for appellant Maria Esparraguera. The Civil Service Reform Act says that career senior executives may not be removed from the senior executive service except for the grounds stated in specific statutes, such as performance under Section 3592 and misconduct under Section 75. That guarantee makes career senior executives, like Ms. Esparraguera, removable from the SES only for cause, not at will. It gives them a legitimate expectation of remaining in the SES unless they do something warranting removal under one of those statutes. In other words, it gives career executives a protected property interest in their career SES appointments. As a result, Ms. Esparraguera could be deprived of that property interest. Her career SES appointment could be taken away from her only through constitutionally adequate procedures, including meaningful notice and opportunity to respond before being removed from the SES. But she did not receive anything like that. Yes, the OSC report that supposedly justified her removal was deliberately withheld. So were the results of the Department's own investigation, which cleared her of the prohibited personnel practice OSC had accused her of. She wasn't afforded an opportunity to defend herself or the decision makers who rated her unsatisfactory and ordered her removal. And her supervisors, who were supposed to be consulted and continue to think that she was one of the best senior executives that they had ever encountered, were also cut out of the process that decided her fate and destroyed her 35-year career. As a highly respected government. Is there any source of criteria as to what constitutes acceptable performance? Yes, yes. So the term here in section 3592 is less than fully successful executive performance as determined under sub chapter 2 of title 43. So it leads back to the systematic appraisal system under section 4312, 4314. And it refers specifically to so it's a five level rating system. What is the top level? The top rating or the top level is five. So five is outstanding, which is what she was originally rated. One is unsatisfactory. And those different levels are rigorously defined through OPM and Department of the Army regulations. So what would constitute fully successful performance? So fully successful would be five. It's fully successful is level three. It's meets expectations, essentially. And this is you can see this meeting expectations is fully successful. Then what is then what's four and five? So four and five is basically exceeds expectations and five is outstanding, which is what she was originally rated at level five. And those different levels, they're not just a general feeling about how someone feels about what she's doing. It's a systematic appraisal system that it has to be defined what each one of those means. And so what was the last rating, if you will? That's the right term. Before I went to the head of the agency. I'm sorry, her last rating before a recommended rating before the head of the agency issued a decision. So her initial rating official rated her five. And then there was the performance review board, a specially convened review board that we didn't know about until after it made its recommendation. It recommended level one unsatisfactory. And that is what the recommended was unsatisfactory. Yeah. And so that was based on documents we didn't have. We didn't even know that they had been convened at the time that will be that as it may. It is unsatisfactory. Which is obviously less than fully successful. It is. Yes. And that standard, that's a performance standard. Performance standards are regularly viewed as being for cause standards. And here, if you look at the regulations in Addendum 25 and 26 of our opening brief, you can see how they actually define what each one of those levels. And in J.A. 49 or appraisal for the year in question, it also provides definitions of what each of those levels. So it's it's the sort of standard that you could invoke in a hearing. That's the kind of understanding that gives rise to a legitimate expectation of remaining in your position. And I would say it is much more rigorous and more carefully defined than performance standards that have been found to establish property interests in other cases. So can I just direct you to Griff? Seems like that's probably the best, if not one of the best cases for the government here. And I appreciate that that involved what was effectively a promotion rather than a demotion. But apart from that, do you think there's a meaningful difference in the legal schemes in terms of whether they actually constrained the agency's decision making? Yes. So I do think that the promotion versus demotion standard was very important. But in addition to that, Griffith was very clear that the acceptable assessment that it could lead to a pay raise there was not tied to the systematic appraisal system that generally was used to evaluate employees. That five level system that we have here is a very similar system for SES employees there. And I would just. That I can point you to the. To the provisions that talk about that. So 5CFR Section 430.305A6, it describes that five level grading system. The department regulations that are in the addendum of the opening brief and as well as JA 49 all have rigorous definitions. And it's extremely close to the performance standards that govern non SES employees. So those are in 5CFR 430.206 and 207. And so you can actually compare a lot of the characteristics that have been found to create a property interest because performance is a four plus standard for non SES employees apply essentially on the same terms to SES employees. I take it that the reason for referring them at any matter, forgetting this one, that the path to discharge running through the head of the agency is so that the head of the agency may make a determination other than the one recommended by the next level. Yes, yes, that is certainly part of it. But what matters is the process that leads up to it and whether we had a meaningful opportunity to have notice of the proposed action. That's wait a minute. You're assuming there's a due process in time. Let's not assume that let's let's talk about whether there is contested here in view of this structure in this scheme in which the agency had exercises the final judgment, if you will, notwithstanding anything recommended to the head. Now, in this case, except he or she, I don't know what was accepted, the last recommendation unsatisfactory. So could equally have rejected it, correct? It could, but I think there's two important things there. So one is the entire appraisal system is designed to the entire appraisal system is defined to provide objectiveness. This is why it's defined standards and criteria. It's why. So it's not the head of the agency. It doesn't say the head of the agency makes the determination can be a lower official. So that's another reason it's different. But even apart from that has to listen to the recommendations of the performance review board, who is supposed to have heard from the person. Is there any case in which under these various personnel schemes that have been reviewed in which a decision that was allocated to the head of the agency was found and held nonetheless to create a entitlement? So I think the Federal Circuit's decision in Brenner is actually pretty on point there. So that involved that was a state system. Was that a state personnel system? No, it involved the VA, the Department of Veterans Affairs. And that 990 F third at 1312 and 1320 at 1322 and 1329 are kind of the key points there. And the Federal Circuit recognized that there that there was a property interest and therefore due process rights for a VA employee could be removed if the secretary of the VA determines that the performance of that employee warrants removal, suspension or demotion. So that was a pretty general standard. It was best in the head of the agency. And there was no question there that that supported a property. And that was Federal Circuit. That's a Federal Circuit. So the last case of this court, as I recall, I understand to deal with the question was Griffith. So, so Griffith did involve a related question. I think there are the three categories, the three characteristics, the three main things that Griffith relied on that are all different here. So one is the appointing authority is not necessarily the agency head here. It wasn't the agency at the made the final decision. The statute doesn't require that it be the secretary of the army where the secretary has determined by the head of the agency. So, it's the appointing authority and that can be someone lower under under the statute here. So, so that's one of the differences. Griffith also said that the standard is pretty vague because it's not tied in the existing performance review standards. Whereas here, this is directly tied into that five level system where those levels are defined by the regulations. And it also involved a pay raise, basically a promotion, which is trying to get something more than you already have. And here we're talking about a demotion for interest in retaining her career. Wouldn't due process apply if a person had a expectation of promotion based on the system? It is certainly potentially relevant distinction. Well, it is the court actually made clear that it was distinguishing cases that involved removals and taking away the positions that people already had. And the courts had rarely, if ever, found a property interest in a promotion, which essentially found the pay. Well, actually, isn't your claim in part that she was deprived of future pay increases or future benefits, which are not vested and maybe never would. So, though, it's the guarantee of higher pay. So, if you're in the SES, you're guaranteed to have 120% of what the GS 15 rate is. And she lost that. She lost the higher leave. She lost the right to non-competitive reinstatement. That's all assuming that her performance would have been sufficiently high rated in the future. It is contingent on that, but I think that's true in any employment case. There are always things that could happen in the future that might warrant removal, but it doesn't change the fact that here, her career SES appointment could be taken away. She could be removed from the SES only for performance or other causes as defined by those regulations and policies. And so that's kind of the four cause standard that creates a legitimate reputation. Thank you. We'll give you a couple of minutes. Mr. Hensherwood, good morning. Good morning, Your Honor. I'm Simia. I'm pleased to court Brett Hensherwood for the government. I'd like to begin with this court's decision in Griffin, where this court addressed a scheme that stated that an employee was entitled to a within-grade pay increase if their performance was of an acceptable level of competence as determined by the head of the agency. But that statute did not create a property interest. That statute is, in material respects, indistinguishable from the one here. You have a situation where there is a generally worded, quite broad performance standard, less than fully successful executive performance, tied to a set of performance review criteria that ultimately lead to a decision by the head of the agency, applying those broad criteria that is vested in his unreviewable discretion about how that employee's performance will be rated. That sort of scheme does not create property interest. And I think Griffith really, and it's, you know, just... Counsel, I think the biggest distinction is that footnote 5 of Griffith says that they were assuming that the performance rating system was not tied in at all. And so what we have to do here is look at the performance rating system. And it's specifically, I think, the most important thing here is the regulations. As your friend said, level 3 is pretty specifically defined as meeting all critical elements. Whereas level 2, which is less than fully successful, requires a specific finding that a rating official has to find that the person did not meet at least one critical element. And that seems to go far beyond what the court thought was happening at Griffith. Your Honor, two points. First of all, what this court said in Griffith, the footnote in Griffith that my colleague is referring to, the court simply noted that there had been new regulations promulgated, and it wasn't taking a view on whether those constrained discretion. And I will say what I've heard from my colleague today at the podium is somewhat different from what we have gotten in the briefs in this case at this point. Can you just address the regulations? Because putting that point aside, the Griffith court very clearly thought the regulations in that case were essentially circular. It said acceptable performance is acceptable performance. And my question to you is, how are the much more detailed regulations here analogous? Your Honor, a few different points about that. So I think starting from the statute and then working down to the regulation, 4313 spells out criteria for performance appraisals, right? That's the statutory. It's a non-exhaustive list of a few different criteria, which are themselves quite broad. Improvements in efficiency or productivity, timeliness of performance, other indications of the effectiveness, productivity, and performance quality of the employees that individual supervises. So very broad criteria. Are you disputing that to give a less than fully successful rating, the regulations seem to say there must be a finding that on one of the defined critical elements of the job, they did not meet expectation. As to SES employees, Your Honor, I don't know of any provision that requires that. And I'm not sure, frankly, which provision you're referring to that might. Appendix D of the regulation. Appendix D of the Army regulation, Your Honor, says, first of all, again, not an argument that the district court addressed because it's not one that's been raised to this point. But what Appendix D of the Army regulation says, it defines the categories quite broadly. And, you know, the same category, you know, fully successful is defined as performance in relation to performance requirements of such quality to be expected only of a proven competent executive. Of course, that person must at least meet requirements for all critical elements. But it doesn't say that that's simply meeting those elements automatically meets the fully successful standard. And then, Your Honor, I would direct you to the provision at the bottom, D3, use of judgment in the rating process. Of course, supervisors, performance review boards, and appointing authorities have substantial discretion determining which rating levels to recommend or approve. And it's recognized that the rating level definitions will not cover every situation in citing a rating. For that reason, supervisors, BRBs, and appointing authorities will be required to exercise judgment if such circumstances arise. It's very difficult for me to derive any concrete objective standards out of that. Right. So you think so to compare that to a statute that says this employee can only be dismissed for cause. Obviously, that statute, too, envisions a lot of discretion. But it's discretion in identifying whether a standard has been met. And I think the point is that in this appendix, the difference between Level 3 and Level 2 is fairly well defined in terms of providing the type of, as Griffith puts it, I think, some meaningful limit on the discretion to be exercised. I just don't, I'm not sure what, let me ask this. Is there another case apart from Griffith that you think is sort of, and finds analogous language to not create a property interest? I'm not aware of specific cases that have addressed circumstances quite like that aside from Griffith. I mean, what I will say is the fact that an agency creates or the statute creates sort of broad guideposts to try to guide the discretion of the decision maker, while expressly reserving and recognizing that these guideposts are not exhaustive, are not going to cover every situation, and that they are not ultimately restricting the decision maker's discretion, isn't the kind of thing that would create a property interest. I think you're back to the same analysis this Court undertook in Griffith. And again, I would just emphasize, the District Court didn't address whether these regulations separately create a property interest. This statute does not, precisely because it's not an argument that had been raised to the District Court. Now, I'm happy to, you know, again, but I don't think it matters insofar as, I mean, even just from the face of this particular regulation that we've just been discussing, I mean, the discretion is evident. I appreciate those points. So what about, I'm not sure we have in mind the same test. So Perry v. Sinderman says a property interest is created by a provision that says you'll continue in your job so long as you do satisfactory work. Ashton v. Civiletti is very similar. How is that, how would that, if less than fully successful is so vague, wouldn't those be insufficient as well? I think it depends also on the other context that goes into assessing whether there's a legitimate expectation of continued employment based on the particular source of law that's at issue there. So the District Court here and, you know, quite appropriately looked at other provisions of the CSRA that, you know, do clearly create a property interest, unlike this one. It looked at, you know, the purposes of this program, as this court did in Griffith. I mean, recognizing that Congress created this system to govern the employment of executives at the highest levels of government service and wanted that system to be modeled on private sector, you know, executive recruitment and retention systems, and to have, you know, removals be, as the Senate report put it, legally unencumbered when it comes to these sort of performance-based removals precisely because of the importance of replacing. So you don't think there's a difference, a meaningful difference in sort of the text if all we had in front of us was less than fully successful compared to inefficiency or the satisfactory work, and instead it's about the specific context of this statute? I mean, I don't think you can abstract it from the context. I certainly think this standard is quite different from something like, you know, misconduct or inefficiency or neglect. I mean, clearly it's a higher – sorry, this is a lower standard in that respect. You don't have to demonstrate neglect to, you know, include someone as less than fully successful. So, you know, I certainly think that there are gradations here. Yeah. One thing I'm wondering about is inefficiency. Is that inefficiency versus less than fully successful? Those seem roughly analogous, right? Your Honor, I think you can be less than fully successful for lots of reasons that have nothing to do with inefficiency, right? That, you know, you're just – your performance is not up to snuff. Or, I mean, here, Your Honor, I mean, you have a somewhat unusual situation in this, you know, where frankly the – what the appointing authority determines they have lost confidence in this particular employee based on their conduct, particularly to serve in the position that that individual had, namely as chief personnel attorney for the Army, given their conduct in the earlier division chief hiring process. So, you know, I think that is an illustration of the kinds of things that can legitimately lead one to conclude that performance is less than fully successful and that performance is, you know, legitimate to rate an individual, you know, at that satisfactory or unsuccessful level. If there are no further questions. All right.  Thank you, Your Honor. Mr. Hinshelwood, why don't you take two minutes? I'm sorry, Mr. Walker. Thank you. The question here is whether there are rules or standards or the sort that you could invoke in here and argue that that standard has not met and doesn't justify a rule. That's Perry v. Sinderman. In Ashton, in Hall, this court found satisfactory performance was enough when it was in the removal context. In Brenner, performance warrants demotion. I want to ask you about Brenner, I guess, because you mentioned it earlier as well. There was an APA claim in that case, right? And it seemed that the statute in question there provided that there must be, that the decision, removal, demotion, or suspension under 714 must be supported with specific reasons. Therefore, absent the articulation of specific reasons, agency action is ineffective as it does not comply with statutory requirements. Anything like that here? So, I do think that here, if you look at section 4312 through 14 of the statute and the regulations, you do find those standards have to be articulated. The process that is supposed to be followed is supposed to, you know, if you look at JA 49 onward, you'll see the extensive explanations that are supposed to be part of that process and that she's supposed to be able to respond to along the way. But I also think that that's really about process. Process is you get a decision that gives specific reasons. It doesn't say what those reasons have to be or how good they have to be. So, that's kind of the process that you're entitled. That doesn't apply whether there's a… Well, APA review, they're going to be held to that standard. Yes, but that's the… That's reasonable. That's really the quality of the reasoning or the process that you're getting. The substantive standard was just the secretary thinks your performance warrants demotion or removal. And so, it was a much less rigorously defined standard than we have here. And it might require judgment, as the government recognized, but every kind of evaluation requires judgment. It doesn't make it… Yeah, but the statute here… …fully subjective. …specifically points that out, right? Where was it? At 826. After going through the level of descriptions, performance rating levels, and all of that, supervisory performance review boards and appointing authorities have substantial discretion in determining which rating levels to recommend or approve. Authorities will be required to exercise judgment in such circumstances, right? I mean, it surely suggests that there is intended to be here a level of discretion different from what would ordinarily apply. Well, there may be a level of discretion, and it might mean that the kind of review that you end up being entitled to ends up being perhaps more deferential in some ways because the standard could be a little bit more capacious. But it's still a standard could invoke. I mean, unsatisfactory performance is defined as repeated instances of falling down on the job and failing to lead people and being counterproductive. Those are the sorts of things that you can tell a person who's evaluating you, if you're given the chance to defend yourself, that you haven't met that standard. And, in fact, supervisors who actually saw her work day to day thought none of that was true. So she'd been able to be given the notice, the opportunity to respond. She could have invoked that standard. She could have persuaded someone to make a different decision. And that's all that Loudermill looks to, you know, were there arguments to be made, a standard that would justify removal was not satisfied. What do you think is the best case from this court or the Supreme Court, finding a similarly phrased statute to give rise to a property interest? I would say Ashton v. Cipolletti probably is the closest one. It says if you continue to do satisfactory work, that was found to be a performance standard. Was that determined by the agency head, do you remember? I do not recall. It could certainly have been a superior. Yeah, so I don't recall in that one. In Brenner, it was by the Secretary of the VA. It was the agency that specifically made that call. And the Ninth Circuit's Wheaton decision also had a very similarly worded standard in terms of performance and satisfactory. All right, thank you. Thank you.
judges: Henderson, Garcia, Ginsburg